IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LYNETTE ANN COSTA,                )
                                  )
        Plaintiff,               )
                                  )
v.                                )
                                  )  Civil Action No. 15-665
CAROLYN W. COLVIN,                )
ACTING COMMISSIONER OF            )
SOCIAL SECURITY,                  )
                                  )
        Defendant.               )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 26th day of September, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability

to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her DIB application on January 31, 2012, originally alleging disability beginning on January 9, 2009, but subsequently amended to January 1, 2010, due to trigeminal neuralgia,[1] depression and anxiety. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on September 16, 2013, at which plaintiff appeared and testified while represented by counsel. On November 21, 2013, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on March 26, 2015, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has an advanced education, was 43 years old on her alleged onset date, and is classified a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has past relevant work experience as a nurse and an attorney. Although the ALJ found that plaintiff engaged in substantial gainful activity during the period from January 2010, through December 2010, the ALJ also determined that there was a continuous 12-month period during which plaintiff did not engage in substantial gainful activity and proceeded to evaluate her case.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ first found that plaintiff suffers from the severe impairments of trigeminal neuralgia and a depressive disorder with prominent anxiety; however, those impairments, alone or

---

[1]Trigeminal neuralgia is a chronic pain condition that affects the trigeminal nerve, which carries sensation from the face to the brain.
See www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/basics/definition/con-20043802 (last visited Sept. 26, 2016).

in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ next found that plaintiff retains the residual functional capacity to perform light work a number of additional limitations. Plaintiff is limited to performing routine, repetitive entry-level tasks that require her to make decisions only within fixed parameters. In addition, plaintiff is precluded from working on a team or maintaining production rate pace. Further, plaintiff is precluded from performing work that requires the use of headphones or any other equipment that would touch the face, head or ears. Finally, plaintiff is restricted to only occasional contact with the public, co-workers and supervisors (collectively, the "RFC Finding").

The ALJ concluded that plaintiff is unable to perform her past relevant work because it exceeds her residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as a cleaner/polisher, packer and sorter/grader. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §423(d)(2)(A).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment;

(3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity.[2] 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's decision is "fundamentally flawed" because it failed to address her episodic and severe pain surges, which she claims is one of the chief debilitating characteristics of her condition identified by her treating providers. See Document No. 10 at 7-8, 16. According to plaintiff, that error is compounded by the ALJ's failure to properly evaluate certain medical opinion evidence from Dr. Raymond Sekula, a neurologist, and Dr. Raymond Gallon, her primary care physician. For reasons explained below, plaintiff's claims lack merit.

Dr. Sekula performed a microvascular decompression surgery on plaintiff in January 2011, with the hope of achieving pain relief for her trigeminal neuralgia. (R. 909). Plaintiff initially did well post-surgery, and Dr. Peter Janetta, a colleague of Dr. Sekula, wrote a letter to plaintiff's private disability insurance carrier that she returned to work full time on March 1, 2011. (R. 918, 951). Plaintiff had no additional contact with Dr. Sekula until he apparently completed a form report for her private insurance carrier in July 2012, indicating that she has frequent break through pain and could not focus or complete tasks, thus she was unable to work. (R. 1125).

The records from Dr. Gallon consist primarily of several form reports that he also apparently

---

[2]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §404.1545(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(4).

completed for plaintiff's private disability insurance carrier. (R. 1089-92, 1124, 1129, 1137-39). In reports dated August 2011 and February 2012, Dr. Gallon indicated that plaintiff was unable to work as of August 10, 2011. (R. 1090, 1092). However, in an October, 2012, report, Dr. Gallon specified that plaintiff was unable to work as of January 9, 2009. (R. 1129). Later, Dr. Gallon noted in reports from July 2012 and January 2013, that "pain is frequent and unpredictable" and that "multiple pain surges" occur daily (R. 1124, 1137).

The ALJ determined that the Dr. Sekula's and Dr. Gallon's opinions on the form reports were not supported by the medical evidence, and consequently discounted them. (R. 24). Plaintiff argues that this was erroneous.

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §404.1527(c)(2). Under this standard, the ALJ properly rejected the opinions of Dr. Gallon and Dr. Sekula contained in the various form reports.

First, Dr. Gallon provided information that was internally inconsistent, which undermines the reliability of his opinion. On two occasions, Dr. Gallon stated that plaintiff was incapable of working as of August 10, 2011, but he later changed that date to January 9, 2009. (R. 1090, 1092, 1129). Dr. Gallon did not explain why he changed his opinion in that regard, nor is it clear how Dr. Gallon could have determined that plaintiff was incapable of working due to trigeminal neuralgia in January 2009, because he stated on two form reports that plaintiff first consulted him for that condition on March 11, 2011. (R. 1089, 1091). In addition to that glaring inconsistency, Dr. Gallon's statements were not supported by his treatment records, (R. 1017-29, 1043-45), which did not document that she was unable to perform her job until February 2012. (R. 1043). Therefore, the ALJ appropriately rejected Dr. Gallon's opinion because it was not well supported, nor was it

consistent with the medical evidence. (R. 24); see 20 C.F.R. §§404.1527(c)(3)-(c)(4) (supportability and consistency are appropriate factors to consider in evaluating medical opinion evidence).

The ALJ also properly rejected Dr. Sekula's opinion issued in July 2012, indicating plaintiff was unable to work. (R. 1125). Dr. Sekula provided this opinion 17 months after his last documented examination of plaintiff on February 22, 2011. (R. 916). As the ALJ correctly observed, the opinion was not well supported by the medical evidence, nor did it reflect ongoing treatment. (R. 24); see 20 C.F.R. §§404.1527(c)(2)(i) and (c)(2)(ii) (length of the treatment relationship and frequency of examination, as well as nature and extent of the treatment relationship are appropriate factors to consider). Therefore, the ALJ's decision to reject Dr. Sekula's opinion was well founded.

For the reasons discussed, the ALJ did not err in her evaluation of the opinions issued by Dr. Sekula and Dr. Gallon. We also note that, contrary to plaintiff's current suggestion that the ALJ's decision is fundamentally flawed because it failed to address her pain surges, neither Dr. Sekula nor Dr. Gallon identified pain surges as a primary debilitating characteristic of her condition as she contends. While it is true that Dr. Gallon indicated on the form reports that plaintiff's "pain is frequent and unpredictable" and that "multiple pain surges" occur daily (R. 1124, 1137), and that Dr. Sekula referenced "frequent break through pain," (R. 1125), their treatment records do not discuss pain surges as being a distinguishing feature in plaintiff's case. We also note that while plaintiff argues that the ALJ failed to account for her pain surges, the RFC Finding was crafted to generally accommodate plaintiff's complaints of pain by precluding her from working with any equipment that would touch her face, head or ears. Moreover, to the extent that pain surges may impact plaintiff's ability to concentrate or interact with others, the ALJ restricted her to routine, entry-level tasks with limited decision making and no need to maintain a production rate pace, as well as no team work and

only occasional contact with the public, co-workers and supervisors. After reviewing the record, we find that the RFC Finding accommodated plaintiff's credibly established physical and mental limitations.

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Lindsay Fulton Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219